**\*NOT FOR PUBLICATON\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RANDOLPH MCLEOD | Crim No. 19-0690 (FLW)<br><br>**OPINION** |

**WOLFSON, Chief Judge:**

Defendant Randolph McLeod ("Defendant" or "McLeod") was charged with unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), in connection with an investigation into an attempted residential burglary in Ocean Township, New Jersey. Before the Court are two pre-trial motions. Defendant filed an omnibus motion to suppress evidence obtained pursuant to warrants and statements he made to law enforcement following his arrests on May 23, 2021, and June 3, 2021. (ECF No. 32.) Defendant also requests that the Government provide him with certain discovery in advance of trial. On June 9, 2022, this Court held a hearing on Defendant's omnibus motion. The Government indicated that it will provide the necessary discovery consistent with Defendant's request, but opposed Defendant's suppression motion. On the record, I denied Defendant's motion to suppress the evidence seized pursuant to the warrants and Defendant's post-arrest statements, the reasoning for which I will discuss herein. Thereafter, the Government separately filed a motion *in limine* seeking to introduce 404(b) evidence relating to law enforcement's burglary investigation. (ECF No. 52.) Defendant opposed the Government's motion. (ECF No. 57.) On July 11, 2022, the Court held a hearing on the Government's 404(b) motion. At the hearing I permitted the introduction of certain 404(b)

1

evidence, and not others. This Opinion provides the legal reasons for the decisions that I rendered on the record.

## I.      BACKGROUND AND PROCEDURAL HISTORY

On April 14, 2019, Ocean Township Police arrived at 401 Parker Avenue (the "Parker Property") to investigate a reported attempted residential burglary.  (*See* Government's Ex. A, GPS Tracking Warrant Affidavit, ¶ 9.)   The homeowner reported that an individual had removed the electrical meter from the west side of the residence.  Video footage captured by the homeowner's surveillance cameras showed an unidentified subject dressed in dark clothing, red shoes, gloves, and a dark cloth face covering with white accents on the property during the morning of April 12, 2019, at approximately 10:03 AM.  (*Id.* ¶ 10.) The subject entered the property via a gate on the east side of the property and proceeded to walk west through the backyard to the electrical panel. (*Id.*).

At approximately 10:26 AM, the Parker Property's surveillance cameras showed the subject walking east through the backyard to the gate on the east side of the property.  (*Id.*.) Surveillance video also showed the subject's head tilted to the right with his ear towards his right shoulder as he walked through the property.  (*Id.* ¶ 9.)  Additional video surveillance from several nearby residences depicted the same subject seen in video surveillance from the Parker Property. (*Id.* ¶¶ 12-21.)

A surveillance video from a residence across the street from the eastern driveway of the Parker Property on Runyon Avenue (the "Runyon Property") also captured footage on April 12, 2019 at the following approximate times between 10 and 10:30 AM:

-   10:03 AM – A burgundy Dodge Dakota is seen traveling south on Sheridan Avenue past the eastern driveway of the Parker Property.

- 10:24 AM – The burgundy Dodge makes a "K turn" on Sheridan Avenue and travels north on Sheridan Avenue towards the Parker Property.

- 10:25 AM – The burgundy Dodge is seen traveling north on Sheridan Avenue out of view of the security camera.

- 10:26 AM – The burgundy Dodge is seen backing up on Sheridan Avenue before proceeding north at a slow rate towards the Parker Property. Less than a minute later, an unknown subject is seen walking from the Parker Property's eastern driveway towards where the burgundy Dodge was last seen. The burgundy Dodge is then seen travelling north on Sheridan Avenue and out of view of the camera.

(*Id*. ¶¶ 12-24.)  Surveillance videos from two additional residences on Parker Avenue depicted the burgundy Dodge Dakota travelling west on Parker Avenue at 9:30 AM and 10:16 AM.  (*Id*. ¶¶ 16-21.)  Using law enforcement databases, law enforcement identified the burgundy Dodge as a 1995 Dodge Dakota bearing a New Jersey license plate, registered to JJM Associates 1 LLP.[1]  (*Id*. ¶¶ 24-25.)  Photographs of the Dodge, captured by Automatic License Plate Recognition systems (ALPR), revealed that the vehicle had an extended bed, damage to the rear driver's side bumper, a tinted rear window with multiple stickers on the driver's side of the rear window, a "4x4" sticker on the passenger side of the truck bed, square shaped headlights, and an aftermarket light bar mounted to the front of the vehicle.  (*Id*.)  Law enforcement also learned of another attempted burglary on Larchwood Avenue (the "Larchwood Property") in the neighboring town of West Long Branch that had been attempted in a similar fashion approximately 12 hours

---

[1]     A 2001 Mercedes Benz bearing New Jersey license plate A12JPJ is also registered to JJM Associates.  (*See* Government's Ex. C, Dodge Dakota Search Affidavit, ¶ 3(bb).)  Law enforcement discovered that McLeod had been issued a motor vehicle ticket while operating the Mercedes Benz in 2018.  (*Id*.)

later by a subject wearing a similar face covering to the subject captured on surveillance at the Parker Property. (*Id*. ¶ 11.)  Surveillance video from the Larchwood Property captured images of a long vehicle with square headlights and an aftermarket light bar on the front of the grill.  (*Id*.)

Based largely on footage from these surveillance videos, Detective Michael Legg drafted an application and affidavit for a Communications Data Warrant (CDW) authorizing the installation and use of a GPS tracking device on the Dodge Dakota (the "GPS Tracking Warrant"). The New Jersey Superior Court found probable cause existed and issued the CDW for the Dodge Dakota.

After obtaining the first CDW for the installation of the GPS tracking device, but before installing the tracker, law enforcement discovered that McLeod had been issued a motor vehicle ticket while operating another vehicle registered to JJM Associates in 2018, and that the Dodge Dakota had been issued a parking ticket while parked near Defendant's residence in Irvington, New Jersey.  (*See* Government's Ex. C, Dodge Dakota Search Affidavit, ¶¶ 3(bb)-(cc).)

On April 30, 2019, law enforcement installed the GPS tracking device on the Dodge Dakota.  (*Id*. ¶ 3(ee).)  A few days later, on May 2, 2019, detectives located the Dodge Dakota in Irvington, New Jersey, and observed McLeod exit his Irvington residence and enter the Dodge Dakota.  (*Id*. ¶ 3(gg).)  At the time, McLeod was wearing red shoes similar to those worn by the suspect from the surveillance video at the Parker residence.  (*Id*.)  The GPS tracking device, however, did not function properly at other times, and went offline for extended periods of time. (*Id*. ¶ 3(ee)-(jj).)  As a result, pursuant to the first CDW, law enforcement replaced the malfunctioning GPS with another GPS tracking device.  (*Id*. ¶ 3(kk).)

On May 23, 2019, law enforcement located the Dodge Dakota at a service station in Asbury Park.  At the time, law enforcement had learned that McLeod had active warrants for his arrest on

unrelated, municipal court matters. (*Id*. ¶ 3(mm).) Law enforcement observed McLeod arrive to the service station as a passenger in a different vehicle operated by another individual. McLeod then exited the vehicle and removed a small green and black Adidas bag. Law enforcement subsequently observed McLeod approach the Dodge Dakota, place the Adidas bag in the bed of the truck, and enter the driver's side of the Dodge. After McLeod entered the vehicle, law enforcement arrested McLeod pursuant to the municipal court warrants. (*Id*.) Following McLeod's arrest, he was interviewed about the burglaries. Law enforcement seized the Dodge Dakota, and Defendant's cell phone and red shoes incident to his arrest. Defendant did not authorize his consent for law enforcement to search the vehicle or his cell phone. The truck was impounded pending further investigation and the cell phone and shoes were secured in an evidence locker. (*Id*.) McLeod denied any knowledge of, or participation in, the burglaries and was released on his own recognizance. (*Id*. ¶ 3(nn).)

Thereafter, law enforcement drafted applications and affidavits for warrants to search the Dodge Dakota and Defendant's cell phone. On May 28, 2019, the Monmouth County Superior Court found probable cause existed and issued the search warrants for the Dodge Dakota and Defendant's cell phone. (*See* Government Exs. D (Search Warrant Dodge Dakota) and F (Search Warrant Cell Phone).) On or about May 29, 2019, law enforcement executed the search warrant on the Dodge Dakota and found the green and black Adidas bag, which contained a semi-automatic pistol, two magazines, and approximately 25 rounds of ammunition. (*See* Government's Ex. G, Storage Locker Affidavit, ¶ 3(pp).) The search also revealed a large knife, window punch tool, electrical equipment, a flashlight, and a pair of black gloves, as well as 31 checks made payable to a limited liability corporation. (*Id*.)

Law enforcement also conducted a physical examination of Defendant's cell phone, pursuant to the cell phone search warrant, and discovered text messages that appeared to be in reference to television sales by Defendant. (*Id*. ¶ 3(qq)-(rr).) Additionally, law enforcement observed that a call had been placed from Defendant's cell phone on April 12, 2019, at the same time that the subject was observed on surveillance during the attempted burglary. (*Id*. ¶ 3(qq).)

On or about May 28, 2019, law enforcement issued a criminal complaint charging Defendant with, *inter alia*, unlawful possession of the firearm recovered from the Adidas bag. In connection with those charges, law enforcement obtained a warrant for Defendant's arrest. Prior to Defendant's arrest, law enforcement also obtained additional search warrants for Defendant's Irvington residence and a storage locker that McLeod had rented at a storage facility in Monmouth County. (*See* Government's Exs. G (Affidavit Storage Locker), H (Search Warrant Storage Locker), I (Affidavit Residence), and J (Search Warrant Residence).)

On June 3, 2019, law enforcement arrested Defendant pursuant to the arrest warrant issued in connection with the May 28 complaint. Thereafter, law enforcement interviewed Defendant. During the video-recorded interview, Defendant denied ownership and knowledge of the firearm that was found in the green and black Adidas bag. However, during processing, Defendant admitted to law enforcement that he "knew that gun was in there." (Government Br. in Opp'n to Defendant's Pretrial Motions ("Govt. Br. in Opp'n to Omnibus Mot."), p. 11.) Subsequently, on June 5, 2019, the New Jersey Superior Court issued a second communications data warrant authorizing the release of Defendant's cell phone records, including historical cell cite location information. (*See* Government's Ex. L, Search Warrant Communications Data.) On September 26, 2019, a federal grand jury charged Defendant with unlawful possession of a firearm by a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1).

Defendant argues that probable cause was lacking for the issuance of the GPS Tracking Warrant and the Dodge Search Warrant, and that the affidavits presented with respect to each of the warrants contained information that was obtained in reckless disregard for the truth entitling him to a hearing under *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). In addition, Defendant requests a hearing to determine the admissibility of his post-arrest statements made on May 23, 2019 and June 3, 2019. As to 404(b) evidence, the Government seeks to introduce evidence relating to law enforcement's investigation into the attempted burglary at the Parker Property as background information and to demonstrate motive. The Court addresses the parties' arguments as they relate to each motion, in turn.

## II.      DISCUSSION

### A.      Motion for a *Franks* Hearing

"The Fourth Amendment prohibits the intentional or reckless inclusion of a material false statement (or omission of material information) in a search-warrant affidavit." *United States v. Pavulak*, 700 F.3d 651, 665 (3d Cir. 2012) (citing *United States v. Yusuf*, 461 F.3d 374, 383–84 (3d Cir. 2006)). In *Franks*, "the Supreme Court determined that a criminal defendant has the right to challenge the truthfulness of factual statements made in an affidavit of probable cause supporting a warrant subsequent to the ex parte issuance of the warrant." *Yusuf*, 461 F.3d at 383.

To obtain a hearing under *Franks*, the defendant must make a "substantial preliminary showing" (1) "that the affidavit contained a false statement, which was made knowingly or with reckless disregard for the truth," and (2) that the false statement "is material to the finding of probable cause." *Id*. (quoting *Franks*, 438 U.S. at 171). "An assertion is made with reckless disregard when 'viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he

reported.'" *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000) (citations omitted). This showing under the first prong requires the defendant to present more than conclusory allegations, "but rather . . . an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements from witnesses." *Yusuf*, 461 F.3d at 383 n.8. With respect to the second prong, affirmatively false statements or omissions are "material to the finding of probable cause if the affidavit, 'with the . . . false material set to one side . . . is insufficient to establish probable cause.'" *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997) (quoting *Franks*, 438 U.S. at 156). At the hearing, the defendant must ultimately prove by a preponderance of evidence that "the affiant knowingly and deliberately, or with reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant," and that "such statements or omissions were material, or necessary, to the probable cause determination." *Id*. (citing *Franks*, 438 U.S. at 171–72.)

Here, Defendant argues that the following alleged factual misstatements warrant a *Franks* hearing:

- The affiant, in reckless disregard of the truth asserted that "Mr. Mcleod 'appeared to be the accused'" in a suspected burglary at 401 Parker Avenue on April 14, 2019.

- The affiant asserted that the suspect was driving in the Dodge Dakota vehicle without factual basis.

(Defendant's Omnibus Mot. ("Def. Omnibus Mot."), p. 33.) Defendant's arguments fail to satisfy either prong of the *Franks* test. With respect to the first prong, Defendant has failed to make a preliminary showing that the affidavits contain any factual misstatements made in reckless disregard for the truth.

Concerning the first alleged false statement, contrary to Defendant's assertion, there is no indication in the affidavits that the affiant, Detective Legg, asserted that McLeod "appeared to be the accused." The warrant affidavits state the following: "The homeowner reported that there was a surveillance camera on the property . . . . The footage captured an unknown subject on the property, which appears to be the accused in this incident." (GPS Tracking Warrant Affidavit, ¶ 9; Dodge Dakota Search Affidavit, ¶ 3 (b).) There is no indication that this statement is factually incorrect. Moreover, the statement clearly implies that "an unknown subject," not McLeod, appeared to be the accused. What is more, McLeod's name appears nowhere in the first affidavit. And, although his name does appear in the second affidavit in support of a search warrant for the Dodge Dakota, it does not appear anywhere in connection with earlier references to the suspect as "the unknown subject" and the "subject depicted in the surveillance at [the Parker Property]." (*See* GPS Tracking Warrant Affidavit, ¶¶ 3(b), (c), (h), (i).)

At the June 9, 2022 hearing, Defendant agreed that the first affidavit in support of an application for the GPS tracking warrant referred to the "subject," not McLeod, as "the accused," but nonetheless argued that the language was ambiguous as the term "accused" is not usually used without an indication. However, I find the characterization neither misleading nor suggestive regarding the affiant's statement that "[t]he footage captured an unknown subject on the property, which appears to be the accused in this incident." (GPS Tracking Warrant Affidavit, ¶ 9; Dodge Dakota Search Affidavit, ¶ 3 (b).)

Defendant's second alleged factual misstatement, "that the suspect was driving in the Dodge Dakota vehicle," also appears nowhere in the challenged affidavits. Rather, Detective Legg states that "it appears that the burgundy Dodge Dakota was utilized to *drive the subject* depicted in the surveillance at [the Parker Property], to and from [the Parker Property] to commit the

attempted burglary" and that "it appears that the subject depicted in the surveillance at [the Parker Property] was a *passenger* in the vehicle."  (GPS Tracking Warrant Affidavit, ¶ 15; Dodge Dakota Search Affidavit, ¶ (i) (emphasis added).)

At the June hearing, Defendant also argued that repeated use of the word "appears" in statements in the affidavits, such as "it appears that the burgundy Dodge Dakota was utilized to drive the subject depicted in the surveillance," render the statements themselves conclusory.  (*Id.*) In that regard, Defendant argues that while the affidavits acknowledge that the occupants of the vehicle were not identifiable in the surveillance footage, they impermissibly conclude that the individual suspect seen walking on the Parker Property is the passenger riding in the Dodge Dakota.

To the extent Defendant contests the statements as they pertain to the Dodge Dakota, I find that the statements are neither reckless nor deliberate falsehoods, because law enforcement was permitted to draw certain inferences based on experience when viewing surveillance video of the vehicle making several turns in the vicinity of the Parker Property at the time of the attempted burglary.  *See, e.g.*, *United States v. Suarez-Arzon*, 664 F. App'x 180, 183 (3d Cir. 2016) (finding that the issuing judge was entitled to consider officer's inferences that the defendant was involved in drug activity drawn from surveillance, and his training and experience in making the probable cause determination); *United States v. Romeu*, 433 F. Supp. 3d 631, 642 (M.D. Pa. 2020) ("the Affidavit need not provide corroboration for each and every statement, but rather the Trooper may draw reasonable conclusions based on his own experiences and common sense.").  In any event, the statement regarding the individual as a passenger in the vehicle is supported by observations regarding the individual's activity vis-a-vis the vehicle.  Indeed, the affiant notes that "at approximately 1003 hours on April 12, 2019 it appears that the [] unknown subject entered the

property via the gate on the east side of the property." (GPS Tracking Warrant Affidavit, ¶ 10).  At approximately the same time, "(1003) hours, a burgundy Dodge Dakota is observed travelling south on Sheridan Avenue, as it passed the eastern driveway of Parker Avenue."  (*Id*. ¶ 13.)  Later, "at approximately 0914 (1026) hours the vehicle then proceeds north on Sheridan Avenue at a slow rate of speed towards Parker Avenue. At approximately 0914 (1026) hours an unknown subject is observed walking from the eastern driveway at Parker Avenue, towards the area where the vehicle was last observed."  (*Id*. ¶ 14.)  At approximately the same time the vehicle is observed "travelling north Sheridan Avenue and out of view of the camera."  (*Id*.)  Importantly, the individual is nowhere to be seen once the vehicle is out of view.  Based on these underlying observations, I cannot find anything reckless regarding the affiant's inference that the suspect appeared to be the passenger in the vehicle.

Consequently, it does not appear that the affiant made any statements in reckless disregard for the truth, let alone false statements in the GPS Tracking Warrant and Dodge Search Warrant affidavits.  Because the burden is on a defendant to make a preliminary showing regarding the satisfaction of both the deliberate falsehood and materiality prongs before he may be entitled to a *Franks* hearing, and Defendant has not succeeded on the first prong, the Court need not assess materiality.  *See United States v. Gordon*, 664 F. App'x 242, 245 (3d Cir. 2016) ("There is simply no requirement in *Franks* that a district court decide both deliberate falsehood and materiality before denying a defendant a *Franks* hearing.")

Nevertheless, the two alleged misstatements do not appear material to the issuing judge's probable cause determinations.  Probable cause is a "fluid concept," that turns on the evaluation of probabilities in specific factual contexts that cannot be narrowed down to a set of precise legal rules.  *Illinois v. Gates*, 462 U.S. 213, 232 (1983).  Upon presentation with an application for a

11

search warrant, the issuing judge must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238. Although, ideally, every affidavit would contain direct evidence connecting the place to be searched to the crime, an issuing judge need not possess direct evidence to issue a search warrant. Indeed, probable cause is often inferred from "the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide [evidence]." *United States v. Jones*, 994 F.2d 1051, 1056 (3d Cir. 1993) (citation and quotation omitted).

The Government argues that absent the challenged statements, the affidavits in support of applications for the GPS Tracking Warrant and Dodge Search Warrant set forth the following observations, which together, support the issuing judge's finding of probable cause for both warrants[2]: (1) the substance of law enforcement's observations of the burglary suspect and the Dodge Dakota from the relevant surveillance videos; (2) law enforcement's knowledge of McLeod's criminal history and status as a suspect in prior residential burglaries in Ocean Township; and (3) law enforcement's subsequent observations of McLeod wearing red shoes and operating the Dodge Dakota on three separate occasions between April 26, 2019 and May 23,

---

[2]     Defendant also argues that all evidence obtained resulting from the execution of search warrants for his cell phone device, cellular records, residence, and storage locker should be suppressed based on (1) lack of probable cause, (2) the doctrine of the "fruit of the poisonous tree"; and (3) false information contained in the corresponding affidavits made in reckless disregard for the truth. (*See* Def. Omnibus Mot., p. 34.) Defendant's arguments, however, appear to rest entirely on the validity of the GPS Tracking and Dodge Dakota search warrants. For the reasons explained, *infra*, the Court finds that the two preliminary warrants were supported by probable cause. Accordingly, Defendant's probable cause and "fruit of the poisonous tree" arguments as to the later issued warrants are moot.

2019.  (*See* Govt. Br. in Opp'n to Omnibus Mot., p. 24.)  I agree.[3]  Furthermore, Defendant's argument that probable cause was lacking for the issuance of GPS Tracking Warrant and Dodge Search Warrant is belied by the timing of the observations of the Dodge Dakota on the surveillance videos from the attempted burglary of the Parker Property on April 12, 2019, and the Dodge Dakota's match with the description of the vehicle seen in the surveillance video of the Larchwood burglary described in the affidavits.  Indeed, surveillance did not depict the Dodge Dakota merely "traveling on public roadways," as McLeod maintains, but effectively captured the truck canvassing the area prior to and during the attempted burglary at the Parker Property.  (Def. Omnibus Mot., p. 22.).  Moreover, to the extent Defendant argues that the affiant asserted that the suspect was driving in the Dodge Dakota vehicle without factual basis, I find this statement

---

[3]      The Government argues that the Court should find in the alternative that the "good faith" doctrine applies.  Because there is probable cause for the GPS Tracking and Dodge Dakota warrants, the Court need not determine this issue.  Nonetheless, were the Court to find probable cause lacking, the "good faith" exception would likely apply here.  "The test for whether the good faith exception applies is 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate [judge's] authorization.'" *United States v. Loy*, 191 F.3d 360, 367 (3d Cir. 1999).  "The mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception." *United States v. Hodge*, 246 F.3d 301, 307–08 (3d Cir. 2001). However, there are situations in which an officer's reliance on a warrant would be unreasonable.  For example, the good faith exception would not apply where "the warrant was 'based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012) (quoting *United States v. Leon*, 468 U.S. 897, 922–23 (1984)).
        Defendant argues that the good faith exception does not apply because (1) the warrants were issued upon deliberately false or reckless affidavits; (2) the warrants lacked probable cause to such a degree that a belief in their existence would be unreasonable; and (3) the warrants were facially deficient to the extent that they failed to particularize the items to be seized.  For the reasons discussed *infra*, these arguments are meritless.  Indeed, the affidavit in support of a warrant to search the Dodge Dakota "was not a 'bare bones' document," but contained sufficient indicia of probable cause to support the issuing judge's finding of probable cause.  *Loy*, 191 F.3d at 369.  Further, contrary to Defendant's contention, the applications in support of the GPS Tracking Warrant and Dodge Dakota search warrant do not contain statements that McLeod "appears to be" the burglary suspect depicted in the surveillance video.  Thus, Detective Legg's reliance on the Dodge Dakota search warrant was reasonable, and in good faith.

immaterial once the affiant determined that the vehicle was in the area at the time of the attempted burglary.    The absence of the challenged statements does nothing to detract from these observations of the Dodge Dakota, and, as a result, are immaterial to the issuing judge's determination of probable cause.  *See Vanderbeck v. United States*, No. 18-4144, 2019 WL 8645662, at *6 (D.N.J. Oct. 1, 2019) (finding allegedly untrue statement regarding a female minor sending a photograph not material to the probable cause determination to search petitioner's email account for evidence of sex crimes).  Defendant has failed to make a substantial preliminary showing as to falsehood and materiality of the alleged factual misstatements in the two affidavits. Consequently, Defendant's motion for a *Franks* hearing is denied.

## B.    Particularity

Next, Defendant argues as part of his suppression argument that all evidence obtained as a result of the execution of the search warrants should be suppressed on the grounds that they (1) fail to state with sufficient particularity the property to be seized; (2) fail to identify the crimes committed; and (3) include an unconstitutional catch-all provision allowing agents to search any evidence "obtained in violation of the penal laws of the state of New Jersey." (Def. Omnibus Mot., p. 35.),

The Fourth Amendment states that warrants must "particularly describe[e] the place to be searched and the persons or things to be seized."  U.S. Const. Amend. IV.  Thus, under the Fourth Amendment, "a warrant may not be issued unless . . . the scope of the authorized search is set out with particularity."  *Kentucky v. King*, 563 U.S. 452, 459 (2011).  This particularity requirement prevents general exploratory searches.   *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).   A "general" warrant "vest[s] the executing officer with unbridled discretion to conduct an exploratory rummaging . . . in search of criminal evidence."  *United States v. Christine*, 687 F.2d

749, 753 (3d Cir. 1982).  "Particularity has three components: 'First, a warrant must identify the specific offense for which the police have established probable cause. Second, a warrant must describe the place to be searched.  Third, the warrant must specify the items to be seized by their relation to designated crimes.'" *United States v. Perez*, 712 F. App'x 136, 138–39 (3d Cir. 2017) (quoting *United States v. Galpin*, 720 F.3d 436, 445–46 (2d Cir. 2013)).  In clarifying how to identify general warrants, the Third Circuit has also distinguished "general" warrants from warrants that it characterizes as "simply overly broad."  *United States v. Ninety–Two Thousand Four Hundred Twenty–Two Dollars and Fifty–Seven Cents*, 307 F.3d 137, 148 (3d Cir. 2002).  As explained by the Third Circuit, a warrant that is merely overly broad "describe[s] in both specific and inclusive generic terms what is to be seized," but authorizes the seizure of items for which there is no probable cause.  *Id.* (alteration in original) (quoting *Christine,* 687 F.2d at 753–54).

Here, the Government argues that the Court need not examine the particularity of each warrant as the Dodge Dakota search warrant, under which the handgun was seized, is not general and it has no intention of introducing any of the evidence seized from the cell phone and premises search warrants.  As to the Dodge Dakota search warrant, I find that it satisfies the Fourth Amendment's particularity requirement as it meets the three components by (1) identifying the offense, "burglaries and related crimes"; (2) describing the vehicle to be searched as a "1995 Dodge Dakota bearing NJ Registration Y38KZS" registered to JJM Associates 1 LLP"; and (3) explaining the relationship between the items seized, such as "[a]ny and all tools" and the crime of burglary by limiting tools to those which "could be used to aid in the removal and or tamper windows, doors, and entry points into a dwelling."  (Government Ex. D., Dodge Dakota Search Warrant.)

15

As to breadth, the Dodge Dakota search warrant was not "overly broad." The warrant authorizes seizure of certain property:

(a) Obtained in violation of the penal laws of the State of New Jersey;
(b) possessed, controlled, designed, intended for use in violation of the penal laws of the State of New Jersey;
(c) which has been used in connection within the violation of the penal laws of the State of New Jersey;
(d) which constitutes evidence of or tends to show the violation of the penal laws of the State of New Jersey; and the said property consisting of:
  (1) Any and all items illegally obtained from any dwelling which at one time was secured in the dwelling as personal property;
  (2) Any and all tools which could be used to aid in the removal and or tamper windows, doors, and entry points into a dwelling;
  (3) Any and all receipts documenting purchases of the items;
  (4) Any and all documentation to establish the identities of the person(s) involved;
  (5) Any and all United States Currency, precious metals, jewelry and financial instruments;
  (6) Any and all materials used to conceal illegally obtained items which was once stored inside the victims dwelling;
  (7) Any and all proceeds of a crime;
  (8) Any and all other evidence relevant to this investigation;
  (9) Any safes, lock boxes, and the like;
  (10) Any and all weapons and/or firearms that might be used in violation of the penal codes of the State of New Jersey, including, but not limited to, burglaries and related crimes.

(*Id.* ¶¶ (a)-(d).) Beginning with subsection (d), I find that the warrant does not "authorize[] the seizure of items as to which there is no probable cause." *Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents ($92,422.57)*, 307 F.3d at 149. Rather, the warrant authorizes the seizure of items related to burglary. To the extent that Defendant argues that there is an insufficient nexus between "weapons and/or firearms that might be used in violation of the penal codes of the State of New Jersey" and burglary, his argument neglects the common-sense association between firearms and burglary for the purpose of demonstrating breadth. *See, e.g.*,

*United States v. Hatfield*, 815 F.2d 1068, 1073 (6th Cir. 1987) (noting that a gun could be "considered a tool of the burglary trade and useful in protecting ill-gotten booty"); *United States v. Hughes*, 940 F.2d 1125, 1127 (8th Cir. 1991) (finding that officers had probable cause to associate a gun found during a search for stolen property with criminal activity).

As to subsections (a) through (c), the Government argues that these items are not overly broad catchalls, but merely introductory phrases that serve as a preface to the list of items in subsection (d). I need not determine whether subsections (a) through (c) are in fact overly broad, however, as any overbreadth can be cured by redaction. *Christine*, 687 F.2d at 754.[4] Further, all items seized or recovered from the search of the Dodge Dakota were items that were specifically defined or identified in the warrant. Thus, evidence seized pursuant to the Dodge Dakota search warrant is not suppressed.

### C.    Post-Arrest Statements

Defendant requests a hearing to determine the admissibility of his post-arrest statements following his two separate arrests. As recounted above, McLeod was first arrested on May 23, 2019, pursuant to municipal court warrants unrelated to the burglary investigation. On June 3, 2019, law enforcement arrested McLeod pursuant to an arrest warrant issued in connection with the May 28, 2019 criminal complaint.

Federal Rule of Criminal Procedure 12(b)(3)(C) permits defendants to submit "motion[s] to suppress evidence . . . before trial." *See United States v. Cummings*, 156 F. App'x 438, 444 (3d Cir. 2005). However, Rule 12 does not by its terms specify when such a motion entitles a

---

[4]    Moreover "[e]vidence seized pursuant to an overly broad warrant need not be suppressed if the good faith exception applies." *Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents*, 307 F.3d at 149. As stated above, although the Court need not address the parties' arguments with respect to the good faith exception, as there is a substantial basis for finding probable cause for the Dodge Dakota search warrant, it appears that the exception applies.

defendant to a pretrial evidentiary hearing.  "An evidentiary hearing for a motion to suppress is not granted as a matter of course." *United States v. Blackman*, 407 F. App'x 591, 594 (3d Cir. 2011) (citing Fed. R. Crim. P. 12(c)).  Rather, district courts maintain the discretion to hold a suppression hearing regarding the admissibility of statements or other evidence. *See United States v. Galindez*, No. 03-75, 2003 WL 22769597, at *1 (D. Del. Nov. 13, 2003).

The Third Circuit has held that a defendant's moving papers "must demonstrate a 'colorable claim' for relief." *United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996) (citation omitted); *United States v. Brink*, 39 F.3d 419, 424 (3d Cir. 1994) (remanding for an evidentiary hearing where defendant claimed facts that, if true, could implicate his Sixth Amendment rights). Indeed, "[a] trial court may refuse a defendant's request for a suppression hearing and motion to suppress if the defendant fails to allege facts that, if proved, would require the grant of relief." *Cummings*, 156 Fed. App'x. at 444 (quoting *United States v. Richardson*, 764 F.2d 1514, 1526–27 (11th Cir. 1985)).

Here, Defendant argues that he is entitled to a hearing because he has "presented a colorable claim of a constitutional violation." (Defendant Response Br., pp. 13-14.)  Specifically, McLeod contends that his arrests were "unlawful," and, as a result, his post-arrest statements were "not voluntary." *Id*.  To present a "colorable" claim, however, a defendant's motion "must consist of more than mere bald-faced allegations of misconduct." *Cummings*, 156 F. App'x at 444 (quoting *Voigt*, 89 F.3d at 1067).  Moreover, there "must be issues of fact material to the resolution of the defendant's constitutional claim." *Voigt* at 1067.

Here, apart from this single conclusory allegation, Defendant makes no further allegations challenging the validity of the arrests on May 23 and June 3, 2019.  For example, McLeod does not further contest the validity of the municipal court warrants that he acknowledges were

unrelated to the burglary investigation.  Nor does McLeod challenge the arrest warrant issued in connection with the criminal complaint charging him with unlawful possession of the firearm seized from the Dodge Dakota.

Further, contrary to Defendant's position, the record as is it stands, is sufficient for the Court to determine that there was probable cause to effectuate McLeod's arrest for unlawful possession of the handgun found in the Adidas bag.  Notably, prior to McLeod's arrest on June 3, 2019, law enforcement observed McLeod remove the small green and black Adidas bag from one vehicle and subsequently place it in the bed of the truck of the Dodge Dakota.  And, as discussed above, the search warrant executed to search the Dodge Dakota was supported by probable cause. (*See* Government's Ex. C., Dodge Dakota Search Affidavit.)  Indeed, as stated *supra*, the affidavit prepared in support of the Dodge Search Warrant describes the following information, which together, amounts to strong support for the state court judge's finding of probable cause: (1) surveillance video from the Parker Property and nearby residences depicting the Dodge Dakota circling the neighborhood during the attempted burglary, (*Id.* ¶¶ (g)-(m)); (2) the Dodge Dakota's issuance of a parking ticket while parked near McLeod's Irving residence (*Id.* ¶ 3(cc)); (3) a description of McLeod as a "known burglar and a subject that has previously been a suspect in [] residential burglaries within the jurisdiction," (*Id.*); and (4) law enforcement's observations of McLeod wearing red shoes and operating the Dodge Dakota on three separate occasions between April 26, 2019 and May 23, 2019.  (*Id.* ¶¶ 3(dd), (gg), and (mm).)  Accordingly, the record before the Court does not preclude a determination of whether there was probable cause to effectuate the June 3, 2019 arrest.  Rather, the record clearly supports the issuing judge's probable cause determination.  Although the parties do not discuss the municipal court warrants in length,

Defendant acknowledges that they were unrelated to the burglary investigation and does not challenge their validity. Thus, I find that McLeod's arrests were proper.[5]

Defendant's argument that his post-arrest statements, including his statement that he "knew that gun was in there," in reference to the Adidas bag, were not voluntary is undermined by a finding of a proper arrest supported by probable cause. *See United States v. Jones*, 41 F. App'x 536, 540 (3d Cir. 2002) (upholding district court's finding denying defendant's motion to dismiss his post-arrest statement where the search of his home was reasonable and executed pursuant to a search warrant in support of probable cause); *United States v. Briggs*, 2008 WL 1745661, at *18 (E.D. Pa. Apr. 14, 2008), *aff'd*, 347 F. App'x 750 (3d Cir. 2009) (denying defendant's motion to suppress post-arrest statements where the court found that the totality of circumstances established that police had probable cause to arrest defendant); *United States v. Madison*, 936 F.2d 90, 96 (2d Cir. 1991) (finding defendant's post-arrest statements admissible in evidence where there was probable cause for defendant's arrest and proper *Miranda* warning had been given).[6]

---

[5]   The Government also argues in the alternative that law enforcement could have lawfully executed warrantless searches under the search incident to arrest, transportation, and inventory search doctrines. None of these arguments are particularly persuasive. For example, although the Government relies on the Third Circuit's holding in *United States v. Shakir*, in support of its search incident to arrest argument, the facts before the Court are distinguishable as the bag searched in *Shakir* was at the defendant's feet, not in the bed of a truck. 616 F.3d 321 (3d Cir. 2010). Moreover, the applicability of the inventory search doctrine rests on the standardized procedures of the police department, *i.e.*, the standard practices of Ocean Township police. *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976). In addition, the Government's reliance on the Third Circuit's opinion in *United States v. Matthews*, 532 F. App'x 211, 224 (3d Cir. 2013) (not precedential) is misplaced, as the court held that "police may search any luggage that the person has in his possession at the time of the arrest, and which *must* accompany him to the police station," and it is not apparent based on the facts in the record that the Adidas bag had to accompany Defendant to the police station. *Id.* (emphasis added). Indeed, the bag did not accompany him to the station and was opened at a later date following the execution of the search warrant. In any event, the Court need not address these alternative arguments, as law enforcement obtained a valid search warrant for the Dodge Dakota.

[6]   Defendant does not challenge the *Miranda* warnings he received. Instead, he argues that although a confession may be "voluntary" under the Fifth Amendment in the sense that *Miranda*

In sum, absent any additional allegations, let alone allegations demonstrating a "colorable claim" for relief, Defendant's motion for an evidentiary hearing to determine the admissibility of his post-arrest statements is denied.

### D.      404(b) Evidence

The Government seeks to introduce 404(b) evidence relating to law enforcement's investigation into the attempted burglary at the Parker Property to be used as background information and to demonstrate motive. Specifically, the Government seeks to introduce:

> [1] Surveillance video of the attempted burglary suspect on the Parker Avenue Property,
> [2] Surveillance video depicting the burgundy Dodge Dakota driving around the area of the Parker Avenue Property during the attempted burglary,
> [3] Law enforcement's identification of the burgundy Dodge Dakota,
> [4] Efforts to locate that vehicle (including testimony and evidence relating to the GPS tracking search warrants),
> [5] Observations of McLeod operating the burgundy Dodge Dakota,
> [6] Law enforcement's arrest of McLeod on May 23, 2019, pursuant to an unrelated municipal court warrant after he entered the burgundy Dodge Dakota, and
> [7] Evidence of the items recovered from the burgundy Dodge Dakota, including items consistent with burglary tools.

(Government's Brief in Support of Motions in Limine ("Govt. Mot. in Limine"), p. 12.) The Government contends that "[the above] evidence. . . satisfies the requirements for admission pursuant to Federal Rule of Evidence 404(b), and therefore, may be admitted at trial." (*Id*., p. 1.)

For evidence to be admissible under Rule 404(b), evidence of other crimes, wrongs, or acts must: (1) be offered for a proper non-propensity purpose; (2) be relevant; (3) satisfy Federal Rule of Evidence 403; and (4) be accompanied by a limiting instruction (if requested) about the purpose

---

warnings were given and understood, such warnings are insufficient to purge an otherwise illegal arrest. (*See* Def. Omnibus Motion, p. 21.)

for which the jury may consider it. *U.S. v. Green*, 617 F.3d 233, 249–50 (3d Cir. 2010) (citation omitted).

With respect to the first prong, prior-act evidence may be admitted for purposes such as, "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *U.S. v. Steiner*, 847 F.3d 103, 111 (3d Cir. 2017). Such evidence may also be properly admitted where it "completes the story" of the charged offense or provides "necessary background information." *Green*, 617 F.3d at 249–50. However, evidence introduced for this purpose has its limits.

In *United States v. Steiner*, the defendant was on trial for a single count of being a felon in possession. The district court permitted the government to introduce, pursuant to Rule 404(b), defendant's prior arrest warrant for an unrelated charge to provide background information. The Third Circuit found that the district court erroneously permitted the government to introduce such evidence, explaining that "when [] information needed to understand what happened in a case is straightforward and easily understood without reference to facts that do not bear on the charged offense, forcing extraneous and potentially prejudicial information into the record in the name of 'background' is not defensible under Rule 404(b)." 847 F.3d at 112. Importantly, "[t]he Government may [not] parade past the jury a litany of potentially prejudicial similar acts that have been established or connected to the defendant only by unsubstantiated innuendo." *Huddleston v. U.S.*, 485 U.S. 681, 689 (1988). Indeed, background evidence under Rule 404(b) is necessary only when other acts are "a prelude to the charged offense, are directly probative of the charged offense, arise from the same event as the charged offense, form an integral part of a witness's testimony, or complete the story of the charged offense." *United States v. Hughes*, 134 Fed. Appx 72, 76 (6th Cir. 2005).

22

Under prong two, evidence introduced must be relevant. Evidence is deemed relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Green* 617 F.3d at 251 (citing Fed. R. Evid. 401). This definition is "very broad." *Id.* (citing *Gibson v. Mayor & Council of Wilmington*, 355 F.3d 215, 232 (3d Cir. 2004)); *see Maude v. City of Philadelphia*, 507 F. Supp.3d 593, 603 (E.D. Pa. 2020) ("Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case.") (quoting *Blancha v. Raymark Indus.*, 972 F.2d 507, 514 (3d Cir. 1992)).

With respect to prong three, relevant evidence is admissible unless "its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. To serve a proper Rule 404(b) purpose, evidence must be "probative of a material issue other than character." *Huddleston*, 485 U.S. at 686. Rule 404(b) prohibits evidence of a crime "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." *U.S. v. Smith*, 725 F.3d 340, 344 (3d Cir. 2013) (quoting Fed. R. Evid. 404(b)(1)). Instead, Rule 404(b) "reflects the revered and longstanding policy that, under our system of justice, an accused is tried for *what* he did, not *who* he is." *United States v. Johnson*, No. 16-162, 2018 WL 1367328, at *5 (M.D. Pa. 2018) (quoting *States v. Caldwell*, 760 f.3d 267, 276 (3d Cir. 2014)).

Ultimately, the purpose of Rule 404(b) is "simply to keep from the jury evidence that the defendant is prone to commit crimes or is otherwise a bad person, implying that the jury needn't worry overmuch about the strength of the Government's evidence." *Green*, 617 F.3d at 249 (quoting *United States v. Taylor*, 522 f.3d 731, 735 (7th Cir. 2008)). Because Rule 404(b) is a rule of general exclusion, the party seeking to admit other acts of evidence has the "burden of demonstrating [the evidence's] applicability." *Caldwell*, 760 F.3d at 276.

At the outset, for the purposes of Rule 404(b), McLeod does not contest the lawfulness of his encounter with law enforcement on May 23, 2019, or that the encounter led to a subsequent search of the Dodge Dakota.  However, McLeod objects to any reference that he was arrested on May 23, 2019 pursuant to municipal court warrants.  Further, apart from the firearm, McLeod objects to introduction of "[e]vidence of the items recovered from the Burgundy Dodge Dakota, including items consistent with burglary tools." (Govt. Mot. in Limine, p. 12.)

Beginning with the May 23, 2019 arrest, the Court finds Defendant's proposal of testimony limited to a lawful encounter and arrest inadequate.  Such a stipulation would create speculation by the jury as to why McLeod was arrested in the first place and could prompt the jury to speculate that McLeod was arrested in connection with a more serious crime such as attempted burglary.  Thus, the Government is permitted to present evidence that McLeod was arrested on an unrelated municipal court warrant, which allowed for the search of the Dodge Dakota incident to arrest.

Evidence of the items recovered from the Dodge Dakota are also admissible.  In *Hatfield*, the Sixth Circuit permitted the introduction of burglary tools as probative of the defendant's knowledge of the presence of a firearm.  *Hatfield*, 815 F2d at 1073.  There, law enforcement officers found, *inter alia*, burglary tools and a firearm during a legal search of the defendant's vehicle.  Thereafter, the defendant was charged with being a felon in possession.  At trial, the court permitted the introduction of the burglary tools under Rule 404(b), because it was proper to show that the defendant had knowledge of the gun, particularly since the defendant denied that he knew the presence of the gun in his vehicle.  Indeed, the court explained that "the possession of burglary tools and police scanners in the van was . . . probative of Hatfield's knowledge of the presence of the gun, which could be considered a tool of the burglary trade and useful in protecting ill-gotten booty." *Id*.

Here, McLeod also contests the introduction of the burglary tools found inside the Adidas bag located in the bed of the truck and elsewhere in the Dodge Dakota. As a factual matter, law enforcement validly searched the Dodge Dakota after McLeod's arrest. The investigators discovered in the truck, among other items, the green and black Adidas bag with a .380 caliber semi-automatic pistol, two magazines, and approximately twenty-five rounds of .380 caliber ammunition inside the bag. A further search of the truck revealed a large knife, a widow punch tool, electrical equipment, a flashlight, a pair of black gloves, and approximately 31 checks, made payable to a limited liability corporation, which had been reported stolen following a residential burglary in December 2018. McLeod's possession of these burglary tools and equipment are probative of his knowledge of the presence of the firearm in the Adidas bag. *See Hatfield*, 815 F2d at 1073. As such, the Court permits the introduction of the evidence, except for the 31 checks, retrieved from the Dodge Dakota for this limited purpose.

Next, McLeod contests admission of the surveillance videos. The surveillance videos of [1] the burglary suspect on Parker Avenue Premise, and [2] the Dodge Dakota driving around Parker Avenue Premise are not admissible to show motive. In support of its position to the contrary, the Government cites to a line of cases for the proposition that burglary evidence, such as tools, tends to be probative of a defendant's motive for possessing a firearm. *See Hatfield*, 815 F.2d at 1072 ((finding "[e]vidence of a defendant's possession of cocaine, jewelry, cash, and merchandise lacking identification" has been held admissible "to establish the defendant's motive for illegally possessing an unregistered firearm."). In that regard, in the Government's view, the introduction of evidence of the burglary at the Parker Avenue Property could demonstrate motive on the part of McLeod, because he is more likely to possess a gun in connection with that burglary. While I recognize there are some out-of-circuit cases that, in those particular circumstances, have

introduced burglary evidence to show motive for possession of a firearm under Rule 404(b), I am, however, not persuaded that in this case, the introduction of the surveillance videos is appropriate for several reasons.

First, McLeod is not depicted in the videos, and more importantly, there is no evidence that the Parker Avenue burglary involved the use of any firearms. While the Government may introduce other evidence to permit the jury to reasonably infer that the suspect depicted in the video was in fact McLeod, that chain of inference is particularly prejudicial when McLeod is not charged, here, with a burglary offense. Rather, he is charged with felon in possession of firearms. "Whether he committed unrelated burglaries that did not involve the use . . . of firearms has little, if any, relevance to [Defendant's] possession of firearms. Rather, such evidence likely constitutes inadmissible propensity evidence." *United States v. Cornelius*, No. 11-60062, 2015 U.S. Dist. LEXIS 192027, at *3 (D. Or. Feb. 26, 2015). Furthermore, the videos, which recorded events on April 12, 2019, do not make it more or less likely that McLeod was in possession of the semi-automatic pistol on the date of his arrest, May 23, 2019. *See United States v. Mayans*, 17 F.3d 1174, 1182–83 (9th Cir. 1994) (reversing the admission of the Rule 404(b) evidence because there was not a close connection between the past drug deals and the charged offense). Accordingly, "the temporal separation between the two events" and the lack of suspect identification all weaken the probative value of the evidence to a point that the "jury [would have] to make inferences" about McLeod's character in order to find that he had the motive to possess a gun. *Smith*, 725 F.3d at 346. That is impermissible under Rule 404(b).

For the same reasons, admitting these videos for background information would also be prejudicial. Indeed, *Steiner* has instructed that courts should be vigilant when determining whether to admit evidence for the purposes of background information. According to *Steiner*, the Court

must avoid "forcing extraneous and potentially prejudicial information into the record in the name of 'background' . . . under Rule 404(b)." *Steiner*, 847 F.3d at 111.  However, I find that the Government is entitled to introduce certain evidence as background information to fill in the gap as to why law enforcement officers were surveilling the Dodge Dakota and McLeod.  This would "complete the story" to avoid jury confusion as to the basis for the officers' arrest of McLeod and the eventual search.  *See United States v. Moore*, 735 F.2d 289, 292 (8th Cir. 1984) (upholding district court's admission of evidence that a firearm had been found in a drug raid, in order to explain the officer's presence in the defendant's house at the time the firearm was found and to avoid jury confusion); *United States v. Weeks*, 716 F.2d 830, 832 (11th Cir. 1983) (upholding district court's admission of evidence that the defendant was under investigation for stealing vehicles, in order to explain the federal agent's presence at the scene of an assault and the assailant's animosity toward the agent).

Indeed, to strike the appropriate balance under Rule 403, the Government may introduce testimony that the Dodge Dakota was under investigation in connection with an unrelated burglary without identifying that McLeod was the suspect. The Government may also introduce still photographs of the vehicle from the surveillance videos and evidence of the law enforcement's efforts to locate the vehicle.  However, the Government may not introduce any testimony or documentary evidence that tends to prove that McLeod was the suspect recorded by surveillance videos at the Parker Avenue Property. On the other hand, the Government may introduce law enforcement observations of McLeod operating the Dodge Dakota, as well as observations of the truck parked near McLeod's residence, as that would not be unduly prejudicial and highly probative. Indeed, that evidence is necessary to explain how law enforcement came to learn that McLeod was associated with the Dodge Dakota, and that he used the vehicle on the day of the

27

arrest. This would also help to explain why McLeod was being monitored and searched. Overall, these types of evidence would properly "complete the story" of the charged offense and provide the necessary background information, *Green*, 617 F.3d at 249–50, without venturing into propensity territory. To further prevent any prejudicial effect, the Court will also provide a limiting jury instruction at trial.

Finally, the Government correctly argues that following the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), the Government must prove beyond a reasonable doubt that at the time McLeod possessed a firearm, he had previously been convicted of an offense punishable by more than one year in prison, and that he knew that he had previously been convicted of such an offense. McLeod has agreed to stipulate to the element of being a prior felon and the knowledge of that felony. (Defendant's Brief in Opposition to the Government's 404(b) Motion ("Def. Br. in Opp'n."), p. 9.)

## II.    CONCLUSION

For the foregoing reasons, Defendant's motion to suppress is **DENIED**, the Government's 404(b) motion is **GRANTED** in part and **DENIED** in part. An appropriate order will follow.


**DATED**: July 15, 2022

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge
